IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Cassandra J. Houser, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 10-160 |
| | ) | |
| Alcoa, Inc. Long Term Disability Plan, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

AMBROSE, Senior District Judge

**OPINION**
**AND**
**ORDER OF COURT**

Plaintiff, Cassandra J. Houser ("Plaintiff" or "Houser"), initiated this action alleging violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), against Defendant Alcoa, Inc. Long Term Disability Plan ("Defendant" or "the Plan"). Specifically, the Complaint alleges that Defendant unlawfully denied Plaintiff long-term disability benefits under the Plan.   Pending before the Court is Defendant's motion for summary judgment (Docket No. 17).   Plaintiff opposes Defendant's motion.   (Docket No. 20).   After careful consideration of the parties' submissions and for the reasons set forth below, Defendant's Motion is granted.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Unless otherwise indicated, the following material facts are undisputed.[1]

---

[1]   Plaintiff failed to file a response to Defendant's concise statement of material facts as required by Local Rule 56.1.   Instead, Plaintiff filed a "Counter Concise Statement of Material Facts" (Docket No. 21) in which the numbered paragraphs set forth her own version of the facts rather than directly respond to

1

## A. **Alcoa's Long Term Disability Plan**

Alcoa, Inc. ("Alcoa") hired Plaintiff on December 17, 1979. During the times relevant to this action, Plaintiff worked as a Senior Purchasing Specialist. The Senior Purchasing Specialist Job is sedentary and requires telephone use, computer use, and desk work.

The Plan[2] is an employee welfare benefit plan within the meaning of ERISA. The Plan is self-funded, with benefits funded by Alcoa, participating subsidiaries, and employee contributions. Alcoa sponsors and administers the Plan. As Plan Administrator, Alcoa has retained discretionary authority to determine eligibility under the Plan. The Plan provides:

> The plan administrator has the discretionary authority to determine eligibility under all provisions of the plans; correct defects, supply omissions, and reconcile inconsistencies in the plans; ensure that all benefits are paid according to the plans; interpret plan provisions for all participants and beneficiaries; and decide issues of credibility necessary to carry out and operate the plans. Benefits under the plans will be paid only if the plan administrator decides in its discretion that the applicant is entitled to them.

Summary Plan Description ("SPD") at 7.[3] MetLife Disability was the Plan's third-party Claims Administrator until January 1, 2005. After January 1, 2005, Alcoa retained Broadspire Services, Inc. (now Aetna Life Insurance Company) to serve as Claims Administrator.

The Plan provides for two levels of appeals. The Claims Administrator has authority to make initial claims determinations and decide first-level employee appeals. Alcoa has

those set forth by Defendant. After reviewing the submissions of the parties, however, I find that, except where otherwise noted, the material facts appear to be undisputed. In certain cases, Plaintiff repeats Defendant's statements of material fact verbatim in her competing statement; in other cases, Defendant cites to documentation in the administrative record that speaks for itself. The parties do not dispute the contents of the administrative record and I cite to it where appropriate. For all of these reasons, although Plaintiff's failure to follow the local rule is inexcusable, I will not automatically deem Defendant's facts admitted or require Plaintiff to file a corrected responsive statement of material facts at this late stage.

[2] Although Defendant is named in the caption as "Alcoa Inc. Long Term Disability Plan," the parties agree that the actual name of the plan is Employees' Group Benefits Plan of Alcoa Inc., Plan I – Plan No. 504. Def.'s Br. (Docket No. 19) at 1 n.1; Pl.'s Resp. (Docket No. 20) at 1 n.1.

[3] A copy of the applicable Summary Plan Description is attached as Exhibit A to the Declaration of Brenda Barlek ("Barlek Decl."). A copy of the plan text is attached as Barlek Decl. Ex. B. See Docket No. 18-2.

designated its internal Benefits Management Committee to oversee operation of the Plan. The Benefits Management Committee has created a separate Benefits Appeals Committee ("BAC") with authority to decide the second (final) level appeals from adverse first-level decisions.

According to the Plan, "totally disabled" means, during the first 24 months, that because of injury or sickness the claimant "cannot perform each of the material duties of your regular job" (the "own occupation" standard). SPD at 13. After 24 months, "totally disabled" means that because of injury or sickness, the claimant "cannot perform each of the material duties of any gainful occupation for which you are reasonably suited by training, education or experience" (the "any occupation" standard). Id.[4] Further, the claimant "must receive appropriate care or treatment from a doctor on a continuing basis." Id. The Plan also provides that "[t]o continue to be eligible for LTD benefits, you may be required by the company or claims administrator to provide satisfactory proof of your continued total disability," and that LTD benefits are not paid for "any period for which you do not provide proof of your continued total disability." Id. at 4; see also id. at 3 ("You also must submit proof of your continued total disability when it is requested by the claims administrator.").

**B. Plaintiff's Long-Term Disability Claim**

Plaintiff went on short-term disability ("STD") leave at the end of 2001 and again in February 2002. When her STD benefits were exhausted, Plaintiff filed a timely claim with the Plan for LTD benefits due to asthma. Plaintiff's initial claim for LTD benefits was approved as of June 9, 2002. On September 17, 2002, the Social Security Administration denied Plaintiff's application for social security disability benefits.

In a letter to Plaintiff dated April 8, 2003, MetLife Disability stated that "[w]e have recently

---

[4] Plaintiff's claim transitioned from the "own occupation" to the "any occupation" standard on November 22, 2003, two years after she first left work due to her medical conditions.

reviewed your claim.  To consider benefits for this claim, specific information will be needed from your physician."  AR 126.[5]  The information requested included:  (1) copies of the two most recent office notes, diagnostic test results, operative reports and discharge summaries, if applicable, and rehabilitation or therapy notes, if applicable; (2) names and dosages of all current medications; (3) functional abilities; and (4) expected return to work date.  Id.  The letter requested that the information be received by April 22, 2003 and stated that "[f]ailure to submit this information timely will result in closure of your claim."  Id.  Documentation in the administrative record indicates that on April 22, 2003, Plaintiff told MetLife that the information would be late.  AR 176.  Another electronic diary entry indicates that on May 6, 2003, Plaintiff stated that she had a breathing test on April 30, 2003 and should have the test results before May 15, 2003.  Id.  The entry states that Plaintiff would make sure her physician sent the updated medical records to the office.  An entry dated June 2, 2003, indicates that Plaintiff was contacted on May 16, 2003 and advised the updated information had not yet been received and that Plaintiff again stated she would have her doctor forward the information to the office.  AR 152, 177.  The June 2 entry further states that the information still had not been received and that Plaintiff's file was now closed.  Id.  The entry concludes by noting that a "letter has been forwarded to the employee; will reopen file once information is received."  Id.  Plaintiff admits that on June 2, 2003, MetLife terminated her LTD benefits because her physician had failed to provide the information that the Plan requested.  Pl.'s Statement of Material Facts (Docket No. 21) ¶ 16.

Plaintiff responded to the Plan days later and claimed her doctor had in fact submitted the information, but that they would send it a second time.  On June 5, 2003, MetLife received four

---

[5]  A copy of the Administrative Record was filed under seal at Docket No. 16.  The Administrative Record is labeled with Bates numbers (e.g., "AR 001").  The parties cite to the Bates numbers in their briefs, and I do the same here.

pages faxed from the office of Carl Scheler, Plaintiff's treating physician, consisting of partial test

results dated April 15 and April 30, 2003, and illegible office notes from April 25, 2003.   AR

127-29.   The record indicates that MetLife reviewed this additional information.   AR 178-79.

On July 14, 2003, MetLife notified Plaintiff that her LTD benefits were being terminated

effective June 1, 2003, because she failed to meet the Plan's definition of "total disability" as of

that date.   The July 14, 2003 denial letter stated, *inter alia*:

> . . . .  We had your complete file reviewed by our Disability Nurse Consultant.
> The review indicated that your employer had previously made accommodations for
> you to return to work.   These accommodations included relocating your job to
> another building, away from the major environmental stressors, but you continued
> with complications from your asthma, and were not able to work.   It is also noted
> at your April 25, 2003 examination, you continued with severe airway obstruction,
> although marked improvement after using a broncho-dilator.   Your file also
> contains test results performed on April 30, 2003.   The test results did not indicate
> an obstruction, which would prevent you from returning to work.
>
> Based on a thorough review of your file, it appears your file does not indicate the
> severity of how your [*sic*] are functionally impaired from your bronchial asthma, to
> indicate why you are unable to return to work.   Therefore, effective June 1, 2003,
> you no longer met the definition of disability as outlined in your Plan and your claim
> is terminated with no further benefits payable.

AR 20-21.   The letter further informed Plaintiff that she could "request a review of the claim in

writing."   Id.   In this regard, the letter stated, *inter alia*:

> When requesting this review, please state the reason(s) you believe the claim was
> improperly denied, and submit any requests to review pertinent documents.
>
> You may also submit additional medical or vocational information and any facts,
> data, questions, or comments you deem appropriate for us to give your appeal
> proper consideration.   MetLife Disability will evaluate all the information and
> advise you of our determination in a timely manner.

Id.

Plaintiff, by counsel, submitted a first-level appeal of the LTD denial on January 9, 2004,

which the Plan received on January 12, 2004.   In support of her appeal, Plaintiff's counsel

provided a record of a two-day hospitalization in August 2003 and an administrative law judge

decision denying her Social Security Disability benefits in June 2003. Plaintiff's counsel also requested a copy of her disability file, which the Plan promptly provided. The hospital records Plaintiff submitted show she was admitted for shortness of breath, but she was not in acute distress and her symptoms were otherwise unremarkable. A chest examination showed her lungs were normally aerated, the heart and vasculature were normal, and there was no free pleural fluid. Plaintiff was discharged with no activity restrictions and no follow-up tests ordered.

On February 10, 2004, Plaintiff's counsel sent MetLife two undated letters from Dr. Scheler and the results of a pulmonary function test from October 22, 2003. The first undated letter from Dr. Scheler states, *inter alia*:

> As has been briefly outline *[sic]* above, Cassandra Houser's asthma appears to be worsening with time despite aggressive medical management. She has become increasingly unable to perform activities associated with her position at Alcoa d[u]e to increasing dyspnea. I do not believe that she will be able to work at any other job for the same reason, namely that her asthma has become quite severe and has impaired her ability to do any kind of physical work and is exacerbated by stress.

AR 086-087. The second Dr. Scheler letter discusses pulmonary function tests Plaintiff underwent with pulmonologist Dr. Bajwa after Dr. Scheler's first letter. Dr. Scheler also states in the second letter:

> As noted previously Cassandra Houser's asthma continues to worsen despite more aggressive therapeutic interventions, and her exacerbations occur with more severity and frequency and less activity and stress. I believe that she is disabled from her present position at ALCOA and other future employment is highly unlikely.

AR 088. Dr. Bajwa noted in the pulmonary function test results that the results were "[c]onsistent with severe COPD with reversible component." He also noted that "[t]here is significant improvement after bronchodilator." AR 089.

By letter dated March 4, 2004, MetLife denied Plaintiff's first-level appeal for LTD benefits. The denial letter informed Plaintiff that the medical records she provided "do not support an impairment that would prevent [her] from performing the duties of her regular job beyond May 31,

2003." AR 022-023. The letter lists the various medical records considered, including records from Dr. Bajwa and a letter from Dr. Scheler. Id. The letter further states that "[i]n an effort to provide Ms. Houser with a full and fair review, we had her entire claim file reviewed by an Independent Physician Consultant, Board Certified in Preventative and Occupational Medicine."[6] Id. The letter describes the consultant's review and conclusion that "[t]he medical records did not support time off from work from May 31, 2003 from a light duty job." Id. at 23.

In its March 4, 2004 letter denying Houser's first-level appeal, MetLife erroneously told Plaintiff she had exhausted her administrative remedies after her one appeal and that she had the right to pursue civil action. On August 6, 2004, Plaintiff's counsel noted his disagreement with the denial decision and submitted additional medical records on her behalf. The medical records consisted of a list of doctors she had visited and test results from June 14, 2004. During a subsequent exchange with Plaintiff's counsel, MetLife reiterated its impression that Plaintiff's administrative remedies had been exhausted under the Plan, but directed him to the Plan Administrator for further information.

In December, 2004, Plaintiff's counsel wrote the Alcoa Benefits Management Committee ("BMC") at the address provided by MetLife, and requested permission to file an additional, voluntary appeal. When the BMC received this letter, it realized MetLife's error in advising Plaintiff she had no further appeals, and sought to correct the mistake. Although Plaintiff had initiated her second appeal beyond the 180-day time period specified in the Plan, the Benefits Appeals Committee ("BAC") waived the deadline for her. The BAC gave Plaintiff until February 18, 2005 to submit her final appeal, and provided her with all the necessary forms and instructions to proceed. Plaintiff did not submit any medical records or information in support of her final

---

[6] A copy of the full Physician Consultant Review, dated February 25, 2004, is located at pages 78-82 of the Administrative Record.

appeal by February 18, 2005 as required. Plaintiff's counsel acknowledged in writing that she had not timely submitted such information, nor had she provided the signed authorization forms requested by the Plan. On February 21, 2005, the Plan found Plaintiff had failed to complete her second and final appeal, despite the extension provided.

In June 2006, Plaintiff initiated a suit in state court seeking LTD benefits after May 31, 2003 (the "First Action"). The Plan removed the action to this Court. Since Plaintiff's final appeal to the Plan was administratively closed due to her failure to submit any supporting information, the parties resolved the First Action by mutually agreeing to remand Plaintiff's claim to the Plan for a substantive final review. The Settlement Agreement, which became effective May 1, 2007, gave Plaintiff 90 days to submit any and all medical information she deemed appropriate in support of her appeal, as she was supposed to have done in February 2005.

Following the settlement of the First Action, the Plan sent Plaintiff's counsel the appeal forms needed to re-pursue her final appeal. Included among the forms was a HIPAA release to be signed by Plaintiff, so the BAC could release her medical information to independent medical reviewers for assessment. On June 5, 2007, Plaintiff, by counsel, submitted three documents to the Plan for consideration during her final appeal: a medical report from Dr. Scheler dated May 8, 2006; a psychological report from Peter Saxman, Ph. D. dated May 12, 2007; and a Notice of Award of Social Security Disability Benefits dated July 23, 2004. This medical information was relevant to the Plan's "any occupation" definition of "total disability" since it related to Plaintiff's condition after November 22, 2003.

In a letter dated June 20, 2007, Plaintiff's counsel conveyed to the BAC a June 11, 2007 letter awarding Plaintiff disability pension benefits under an Alcoa retirement plan. AR 016-018.[7]

---

[7] The applicable Alcoa Retirement Plan considers an individual permanently incapacitated if they are totally disabled due to bodily injury or disease, so that they cannot be employed by Alcoa or a subsidiary in a

Plaintiff's counsel acknowledged in his June 20, 2007 cover letter that Plaintiff cannot receive benefits under both the disability pension plan and the LTD plan, and that Plaintiff's claimed entitlement to LTD benefits would cease as of the date of the pension award.

On September 6, 2007, Plaintiff's counsel returned the HIPAA release executed by Plaintiff. In the cover letter, counsel advised the BAC that Plaintiff "was not submitting any additional medical evidence in support of this claim." AR 034. The administrative record indicates that the BAC obtained two additional independent medical reviews from the Medical Review Institute of America, Inc. ("MRIoA"), one from a board certified psychiatrist and one from a pulmonary specialist.[8] AR 002, 024-031. Both reviewers issued written reports dated September 20, 2007, in which each concluded that Plaintiff was not totally disabled as defined in the Plan beyond May 31, 2003. AR 024-031.

The BAC denied Plaintiff's final appeal by letter to Plaintiff's counsel dated October 15, 2007. The denial letter stated, *inter alia*, that "[a]fter a thorough review of your client's case, and based on Plan provisions and the independent medical reviews, your appeal has been denied. The reason for this determination is that the medical documentation provided does not indicate a totally disabling condition as defined by the Plan." AR 001. The BAC's letter also informed Plaintiff of her right to file a civil action, which concluded the administrative process and led to the instant litigation.

## C. The Instant Litigation

In December 2009, Plaintiff initiated a suit in state court seeking LTD benefits after May 31, 2003. On February 4, 2010, the Plan removed the action to this Court. (Docket No. 1). Defendant answered Plaintiff's Complaint on February 9, 2010. (Docket No. 3). On May 17,

---

position suitable to their training or experience.

[8] Consistent with MRIoA policy, the reviewing physicians' names were kept confidential. AR 026, 031.

2010, Defendant filed the instant Motion for Summary Judgment, Concise Statement of Material Facts, and supporting brief. (Docket Nos. 17-19). On June 14, 2010, Plaintiff filed a Brief in Opposition and "Counter Concise Statement of Material Facts." (Docket Nos. 20-21). Defendant filed a Reply Brief and Responsive Concise Statement of Material Facts on June 28, 2010. (Docket Nos. 22-23). The Motion is now ripe for review.

## II.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir. 1987). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the nonmoving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial. Celotex, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to

the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988) (quoting Celotex, 477 U.S. at 322).

## III. LEGAL ANALYSIS

### A. ERISA Standard of Review

Under 29 U.S.C. § 1132(a)(1)(B), a participant in an ERISA benefit plan denied benefits by the plan's administrator may sue in federal court "to recover benefits due to him under the terms of his plan." "ERISA does not set out the standard of review for an action brought under §1132(a)(1)(B) by a participant alleging that he has been denied benefits to which he is entitled under a covered plan." Mitchell v. Eastman Kodak Co., 113 F.3d 433, 437 (3d Cir. 1997). Yet some guidance is available.

> [I]n Firestone Tire & Rubber Co. v. Bruch, the Supreme Court addressed the question of the appropriate standard for actions challenging "denials of benefits based on plan interpretations." 489 U.S. 101, 108, 109 S. Ct. 948, 953, 103 L. Ed.2d 80 (1989). The Court held that "a denial of benefits challenged under §1132(a)(1)(B) is to be under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. at 115, 109 S. Ct. at 956-57.

Mitchell, 113 F.3d at 437; see also Conkright v. Frommert, __ U.S. __, 130 S. Ct. 1640, 1646 (2010). In other words, the *de novo* standard operates as a default. Mitchell, 113 F.3d at 437. Where the plan document has conferred discretionary authority on the plan administrator to make certain determinations, my review is limited to whether a specific determination was arbitrary and capricious. Id. at 439; Howley v. Mellon Fin. Corp., __ F.3d __, 2010 WL 3397456, at *3 (3d Cir. Aug. 31, 2010). The arbitrary and capricious standard applies to the plan administrator's

interpretation of the terms of the plan as well as any factual determinations regarding a participant's eligibility for and entitlement to plan benefits. <u>Mitchell</u>, 113 F.3d at 438-39.

An administrator's conflict of interest, if any, does not alter the standard of review for evaluating a denial of benefits. Rather, "courts reviewing the decisions of ERISA plan administrators or fiduciaries . . . should apply [the] deferential abuse of discretion standard of review across the board and consider any conflict of interest as one of several factors in considering whether the administrator or the fiduciary abused its discretion." <u>Estate of Schwing v. The Lilly Health Plan</u>, 562 F.3d 522, 525 (3d Cir. 2009) (citing <u>Metropolitan Life Ins. Co. v. Glenn</u>, 554 U.S. 105, 128 S. Ct. 2343, 2350 (2008)); <u>see also</u> <u>Howley</u>, 2010 WL 3397456, at *4 (A conflict of interest "is merely one factor to be considered in evaluating whether [the administrator's] decision actually constituted an abuse of discretion.").

Here, the parties agree that the Plan vests with the Plan Administrator the discretion to determine eligibility for benefits. Accordingly, I may overturn a decision of the Plan Administrator only if "it is without reason, unsupported by substantial evidence or erroneous as a matter of law." <u>Howley</u>, 2010 WL 3397456, at *3 (quoting <u>Abnathya v. Hoffman-La Roche, Inc.</u>, 2 F.3d 40, 45 (3d Cir. 1993)); <u>see also</u> <u>Lasser v. Reliance Standard Life Ins. Co.</u>, 344 F.3d 381, 384 (3d Cir. 2003). "A decision is supported by 'substantial evidence if there is sufficient evidence for a reasonable person to agree with the decision.'" <u>Courson v. Bert Bell NFL Player Retirement Plan</u>, 214 F.3d 136, 142 (3d Cir. 2000) (quoting <u>Daniels v. Anchor Hocking Corp.</u>, 758 F. Supp. 326, 331 (W.D. Pa. 1991)). I am not free to substitute my own judgment for that of the Plan Administrator in determining eligibility for plan benefits. <u>Lasser</u>, 344 F.3d at 384. With this highly deferential standard in mind, I turn to the merits of Defendant's motion for summary judgment on this claim.

**B.** **<u>Denial of Plaintiff's LTD Benefits</u>**

The primary issue before me is whether the Plan's decision to deny Plaintiff benefits was

arbitrary and capricious. When reviewing a denial of benefits under the arbitrary and capricious standard, I may consider only the evidence available to the Plan Administrator at the time the decision in question was made. Abnathya, 2 F.3d at 48 n.8; Mitchell, 113 F.3d at 440; Stout v. Bethlehem Steel Corp., 957 F. Supp. 673, 691 (E.D. Pa. 1997). The burden is on Plaintiff to demonstrate that the denial of benefits was arbitrary and capricious. Id. at 691. Defendant argues that the Plan did not abuse its discretion in denying Plaintiff LTD benefits as of June 1, 2003, and that its decision was reasonable and supported by ample record evidence. After careful review of the administrative record and the parties' submissions, I agree.

As an initial matter, it was Plaintiff's burden under the Plan to demonstrate continued total disability, not the Plan's burden to show she was not disabled. See SPD (Docket No. 18-2) at 3-4; see also Graham v. Guardian Life Ins. Co. of Am., No. 2:06cv129, 2007 WL 2905891, at *5 (W.D. Pa. Sept. 28, 2007); Rupert v. Prudential Ins. Co., Case No. 05-CV-1022, 2006 WL 910405, at *9 (M.D. Pa. Apr. 7, 2006). In its denial letters, the Plan consistently informed Plaintiff that the documentation in her file was insufficient to support an impairment that would prevent her from returning to work after May 31, 2003, and gave her numerous opportunities to submit additional medical, vocational, or other information in support of her disability claim. Despite these requests, however, Plaintiff provided relatively few medical records pertinent to her claim. Indeed, the file contains very little medical documentation regarding Plaintiff's medical condition between 2004 and 2006, and few, if any, documents that directly relate to her health as of June 1, 2003. Even Dr. Scheler[9] and Dr. Saxman's 2007 letters cite primarily to test results and medical records from 2003 and prior. AR 005-009.

If anything, as noted in the medical reviews and denial letters, the few test results and

_____

[9] Although Dr. Scheler's 2007 letter states generally that he had treated Plaintiff since 1992, he did not provide office notes or other medical records to demonstrate continuing care between 2004 and 2006. AR 008-009.

other objective evidence that Plaintiff did submit in this case support the Plan's decision to discontinue benefits. For example, although the records indicate asthma and COPD with both a restrictive and obstructive pattern, those same records, including test results from April 2003, show consistent improvement of her breathing problems with bronchodilator therapy. Although Plaintiff was hospitalized for two days in early-August 2003, she again improved with bronchodilator therapy, cortical steroids, and breathing treatments and there is no evidence of problems or complications resulting from the hospitalization. Pulmonary function tests from October 2003 again showed good bronchodilator response. With respect to Plaintiff's alleged psychological issues, the records show that a psychiatrist released her to return to work in February 2002; that her cognitive functioning in April 2002 was described as excellent and she was less depressed; and that in October 2002 she was described as cheerful. Except for the 2007 Dr. Saxman letter and a brief mention in Dr. Scheler's 2007 letter, the remaining records contain little reference to depression and no indication of how depression might have prevented her from working in her job in June 2003 or in any job after November 2003.

Furthermore, the Plan retained at least four independent medical reviewers – a Disability Nurse Consultant at the initial denial stage; an Independent Physician Consultant at the first-level appeal (AR 078-082); and two specialists from MRIoA at the second-level appeal (AR 024 -031). Each of these professionals conducted a thorough review of Plaintiff's complete medical file and determined that the available medical evidence did not support a finding that Plaintiff was totally disabled within the meaning of the Plan. Consistent with these examiners' conclusions as well as the record evidence, or lack thereof, the Plan appropriately determined that Plaintiff had not established a total disability after May 31, 2003. See, e.g., Ford v. Unum Life Ins. Co. of Am., 351 F. App'x 703, 707 (3d Cir. 2009) (denial of LTD benefits not arbitrary and capricious where reviewing physicians determined claim was not medically supported).

14

For all of these reasons, I find that that the Plan's decision to discontinue Plaintiff's LTD benefits after May 31, 2003 was supported by substantial record evidence and was not arbitrary and capricious.

## C. Plaintiff's Counterarguments

Plaintiff advances four arguments in support of her contrary position that Defendant's denial decision was arbitrary and capricious. Specifically, Plaintiff argues that:

1. The written decision of the BAC is impermissibly vague and does not meet the requirements of a reasoned decision under ERISA;

2. The BAC's reliance upon a third party review organization and "anonymous" physician reviews failed to provide Plaintiff with a "full and fair" review of her claim and resulted in an arbitrary decision on the merits;

3. The BAC's apparent rejection of Scheler's and Saxman's medical reports ignored pertinent medical evidence and lacks reasonable basis; and

4. The BAC's apparent failure to provide any weight to either the decision of the Social Security Administration awarding Plaintiff benefits or Alcoa's determination under the Alcoa Pension fund was arbitrary and capricious.

Pl.'s Resp. at 3-9. After careful consideration and for the reasons set forth below, I find that these arguments are unpersuasive.

### 1. Sufficiency of the BAC's Written Decision

First, Plaintiff argues that the BAC's October 15, 2007 letter denying her second-level appeal is impermissibly vague and does not meet the requirements of a reasoned decision under ERISA. Pl.'s Resp. at 3-5. Specifically, Plaintiff notes that the four-paragraph letter contains only one sentence setting forth the reason for the denial and does not set forth any specifics regarding that reason (for example, the nature of the deficiency in her medical documentation, the opinion of either of the "independent" medical professionals, and the reasons for rejecting her treating physician's and psychiatric examining physician's reports and recommendations). Plaintiff asserts that this denial letter violates Section 1133(1) of ERISA and that Defendant's

arguments in support of summary judgment constitute impermissible *post hoc* rationalizations by legal counsel.   Pl.'s Resp. at 3-5.   This argument is without merit.

ERISA requires that every employee benefit plan "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant."   29 U.S.C. § 1133(1).   ERISA's interpreting regulations expand on this provision to require that a plan administrator give notice of "any adverse benefit determination" that, *inter alia*,

    shall set forth, in a manner calculated to be understood by the claimant –

    (i)     The specific reason or reasons for the adverse determination;

    (ii)    Reference to the specific plan provisions on which the determination is based;

    (iii)   A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

    (iv)    A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review. . . .

29 C.F.R. § 2560.503-1(g)(i)-(iv).   The regulations define "adverse benefit determination" as "a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit . . . ."   Id. § 2560.503-1(m)(4).   Notice under these provisions is sufficient if it substantially complies with the governing regulations.   See, e.g., Mazur v. Hartford Life & Acc. Co., Civ. A. No. 06-1045, 2007 WL 4233400, at *14 (W.D. Pa. Nov. 28, 2007) (Ambrose, J.).

Although Plaintiff focuses on the final denial letter, I must consider all of the exchanges between Plaintiff and the Plan in determining the sufficiency of the notice.   See Wade v. Hewlett-Packard Development Co. LP Short Term Disability Plan, 493 F.3d 533, 539 (5th Cir. 2007).   In this case, such exchanges include, *inter alia*, the initial denial letter and the denial letter

after Plaintiff's first-level appeal, as well as the final denial letter. These letters more than satisfy ERISA's requirements. The initial letter quotes the specific plan provisions on which the denial was based; informs Plaintiff that she may submit additional medical or vocational information; and describes Plaintiff's appeal rights and applicable time limits for appeal. AR 020-021. The two-page letter also describes the file materials the Plan reviewed and sets forth the specific reasons for the adverse determination. Id. (summarizing the medical records reviewed and stating that "[b]ased on a thorough review of your file, it appears your file does not indicate the severity of how your *[sic]* are functionally impaired from your bronchial asthma, to indicate why you are unable to return to work"). AR 021.

If anything, the March 4, 2004 first-level appeal denial letter (which was sent to Plaintiff's counsel) is even more detailed and specific. AR 022-023. Like the initial letter, it quotes the Plan definition of disability and describes the medical records the Plan received and reviewed, including a letter from Dr. Scheler, pulmonary function test results from Dr. Bajwa, and a file review by an Independent Physician Consultant. The letter also sets forth the specific reasons for the appeal denial, concluding that "[b]ased on our review of the information provided, the medical records provided do not support an impairment that would prevent Ms. Houser from performing the duties of her regular job beyond May 31, 2003." AR 023.

The final denial letter to Plaintiff's counsel is more succinct, but it does set forth the Plan definition of disability and explains Plaintiff's right to file a civil action under ERISA Section 502(a). AR 003. Although the letter does not describe in detail the specific medical documentation considered, it states that it reviewed the Second Level Appeal Plaintiff's counsel submitted. Id. Those appeal materials included the May 8, 2007 letter from Dr. Scheler, the May 15, 2007 psychological report from Dr. Saxman, the July 23, 2004 notice of award of Social Security benefits, and the June 11, 2007 disability pension award letter. AR 003-018. The denial letter

also notifies Plaintiff's counsel that her appeal was reviewed by two independent medical professionals who were not involved in any previous adverse determinations regarding Plaintiff's claim. AR001. Consistent with the first two denial letters, the final letter states that the reason for the denial is "that the medical documentation provided does not indicate a totally disabling condition as defined by the Plan." AR001.

For all of these reasons, I find that the denial letters provided Plaintiff with sufficient information to understand the basis for the denial of benefits – insufficient documentation of a disability -- and were, at the very least, in substantial compliance with ERISA's notice requirements. Nothing more is required. See Mazur, 2007 WL 4233400, at *14.[10]

### 2. Reliance on "Anonymous" Third-Party Medical Reviews

Second, Plaintiff argues that the BAC's reliance upon a third party review organization and anonymous "physician" reviews failed to provide Plaintiff with a "full and fair" review of her claim and resulted in an arbitrary decision on the merits. Pl.'s Br. Supp. at 5-8. Specifically, Plaintiff refers to the two opinions from physicians at MRIoA who conducted third-party reviews of Plaintiff's claim file at the Plan's request at the second-level appeal stage. Id. Plaintiff argues that neither reviewer sets forth a basis to reject the limitations set forth by Drs. Scheler or Saxman and that both reports are vague, conclusory, and lack a rational basis in specific and identifiable facts. Id. This argument is without merit.

As an initial matter, I disagree with Plaintiff to the extent she argues that any reliance by the Plan on these third-party reviews was arbitrary and capricious simply because the reviews were anonymous. Although ERISA requires plans to "provide a claimant with a reasonable opportunity for a full and fair review of a claim," that requirement does not prohibit plans from

---

[10] I also disagree that the Plan relies on "*post hoc*" rationales to support its motion for summary judgment. Rather, consistent with the reasons set forth in the denial letters, the Plan's primary argument is that the medical documentation Plaintiff provided was insufficient to establish a disability under the Plan as of June 1, 2003.

consulting with an unidentified medical expert in connection with the grant or denial of benefits. Rather, applicable regulations require only that plans provide a procedure through which a claimant can discover the identification of a medical reviewer. <u>See</u> 29 C.F.R. §§ 2560.503-1(h)(3)(iv), 2560.503-1(h)(4); <u>see also</u> <u>Gibala v. Eaton Corp. Long Term Disability Plan for U.S. Employees</u>, No. 05 C 5802, 2006 WL 3469540, at **11-12 (N.D. Ill. Nov. 30, 2006) (rejecting claimant's challenge to reliability of report from unidentified MRIoA reviewer). Here, Plaintiff does not allege that she ever requested the identity of the MRIoA reviewers or that the Plan failed to provide a procedure through which she could have done so.

To the extent Plaintiff insinuates that the anonymity of the MRIoA reviewers casts doubt about their expertise, that argument likewise fails. Although the reports do not identify the reviewers by name, they plainly set forth the reviewers' qualifications. For example, the report of the physician who focused on Plaintiff's pulmonary impairments states that the reviewer has been in active practice since 1999 and is board certified in Critical Care Medicine, Pulmonary Disease, and Internal Medicine. It also states that the reviewer treats adult and pediatric patients and is a member of the American College of Chest Physicians, American Thoracic Society, and the American College of Physicians. AR 030-031. With respect to the review of Plaintiff's alleged depression, the applicable report describes the reviewer as board certified in Psychiatry with subcertifications in adolescent and addiction psychiatry. The reviewer has been in active practice since 1967 and is a member of, *inter alia*, the American Medical Association, the American Psychiatric Association, and the American Psychoanalytic Association. AR 025-026. The mere fact that the reports do not disclose the names of the reviewers does not discredit these qualifications.

I likewise disagree that the Plan abused its discretion to the extent the third-party reviews conflict with the opinions of Plaintiff's treating physicians. It is well-established that, unless

otherwise provided in the Plan, the opinions of a treating physician are not entitled to special deference in ERISA cases. See, e.g., Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825 (2003). Thus, a Plan is entitled to credit the opinions of non-treating medical reviewers or reliable evidence, even if that evidence conflicts with a treating physician's evaluation. Id. at 834 ("Courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."); Krensavage v. Bayer Corp., No. 02:04cv1476, 2006 WL 2794562, at *9 (W.D. Pa. Sept. 27, 2006), aff'd, 314 F. App'x 421 (3d Cir. 2008) (review committee's reliance on opinions of independent doctors that plaintiff could return to work was not arbitrary and capricious even though plaintiff's treating physicians repeatedly indicated she was physically unable to perform any work activities); Stratton v. E.I. Dupont de Nemours & Co., 363 F.3d 250, 258 (3d Cir. 2004) ("[P]lan administrators are not obliged to defer to the treating physician's opinion."); Graham, 2007 WL 2905891, at *8 (same).

Plaintiff's objections to the content of the third-party reviews are also without merit. The Plan retained both reviewers to examine the file to determine if Plaintiff was totally disabled as defined by the Plan. The opinions expressed in the reports are consistent with this assignment, and Plaintiff does not cite to any case law indicating it was improper for the Plan to utilize independent reviewers for this purpose. Moreover, there is no evidence that the MRIoA reviewers ignored Plaintiff's subjective complaints or the opinions of Plaintiff's treating physicians. To the contrary, both MRIoA reports indicate that the reviewers considered all of the pertinent medical records, including the Scheler and Saxman letters and other documents submitted as

part of Plaintiff's second-level appeal.[11]   In connection with this review, both MRIoA physicians correctly note that there was no new information in the materials they reviewed to support Plaintiff's claim of total disability.[12]   Again, the mere fact that the MRIoA reviewers reached a different conclusion than Saxman and/or Scheler regarding Plaintiff's disability status does not in itself render the independent reviews unreliable or the Plan's reliance on them arbitrary and capricious.

For all of these reasons, Plaintiff has not established that she did not receive a full and fair review of her claim or that the Plan's reliance on the MRIoA or other independent reviews otherwise rendered her benefits denial arbitrary and capricious.

### 3.   "Rejection" of Treating Physician Medical Reports

Plaintiff's third argument is that the Plan arbitrarily disregarded the 2007 medical "reports" by her treating physician, Dr. Scheler.[13]   This argument is unpersuasive.   As set forth above,

---

[11] In the case of the psychological report, the reviewer specifically discusses the May 8, 2007 letter from Dr. Scheler as well as the May 8, 2007 psychological examination by Dr. Saxman, including a description of both Plaintiff's subjective complaints and the lack of objective findings.   AR 024-027.   The reviewer also discusses other documentation stating that a psychiatrist released Plaintiff to return to work in February 2002; that her cognitive functioning in April 2002 was described as excellent and she was less depressed; and that in October 2002 she was described as cheerful.   AR 024-025.   The MRIoA report discussing Plaintiff's physical limitations lists the numerous documents reviewed including the Scheler and Saxman letters.   The report goes on to explain in detail the main objective physiologic parameters used in the evaluation of pulmonary impairment and notes that the latest data available to him (the 2003 test results) show, *inter alia*, only mild to moderate impairment after use of a bronchodilator; relatively good performance after a six minute exercise test; and the ability to walk up to almost 1,000 feet without any oxygen desaturation.   Id.

[12] As set forth more fully below, although Scheler's letter is dated in 2007, he relies mainly on the same test results and documentation from 2003 and prior that the Plan reviewed at the initial denial stage and/or first-level appeal.   Neither Scheler nor Saxman's letters discuss any objective information concerning Plaintiff's condition between 2004 and 2006.

[13] Although the heading of this portion of Plaintiff's opposition brief also refers to the BAC's alleged rejection of Dr. Saxman's report, she only discusses Dr. Scheler's letter in her argument.   Because Plaintiff has not sufficiently developed her argument with respect to Dr. Saxman, I focus primarily on Dr. Scheler herein.   I note, however, that in addition to the reasons discussed with respect to Dr. Scheler above, Dr. Saxman examined Plaintiff in 2007 and there is no evidence he treated her prior to that date.   In addition, his letter does not refer to any other psychological treatment during the relevant time period.   Thus, nothing in Dr. Saxman's report contradicts the Plan's conclusion that Plaintiff failed to supply adequate documentation to

unless otherwise provided in the Plan, the opinions of a treating physician are not entitled to special deference in ERISA cases. See, e.g., Black & Decker Disability Plan, 538 U.S. at 825, 834; see also Krensavage, 2006 WL 2794562, at *9; Ford, 351 F. App'x at 707 (citing Stratton, 363 F.3d at 258). Thus, it was not arbitrary and capricious for the Plan to rely on the opinions of at least four other health care providers who opined that Plaintiff had not demonstrated continued disability under the Plan. Moreover, the only information from Dr. Scheler Plaintiff submitted with her final appeal was his 2007 letter. The only records to which Dr. Scheler refers in his letter, however, are the same test results and information that the Plan considered and expressly rejected as insufficient during the initial denial and/or the first-level appeal. Plaintiff does not refer to any additional office notes or other medical records concerning Dr. Scheler's treatment of her between 2003 and the date of the letter. These omissions are consistent with the Plan's position that Plaintiff's documentation did not support a total disability finding.

I likewise disagree with Plaintiff that the Plan impermissibly ignored the subjective complaints described in Dr. Scheler's letter. As set forth above, both reviewing physicians considered the contents of Dr. Scheler's letter at the second-level appeal stage and concluded that the record did not support a disability finding. To the extent those reviewers, the Plan, and/or other medical reviewers relied on the objective record evidence, or lack thereof, in reaching their conclusions, such reliance was not arbitrary or capricious. This is especially true here, where the available objective evidence is inconsistent with Plaintiff's subjective complaints.

### 4. Social Security Disability Award and Disability Pension Award

Finally, Plaintiff argues that the Plan acted arbitrarily and capriciously by failing to provide any weight to either the decision of the Social Security Administration awarding Plaintiff benefits

---

support a continuing disability after May 2003.

or Alcoa's determination that Plaintiff was entitled to disability pension benefits under the Alcoa Pension fund.   This criticism is unwarranted.

As an initial matter, there is no evidence that Defendant failed to consider the Social Security Administration's award of benefits or Plaintiff's award of disability pension benefits. Plaintiff submitted copies of both decisions for purposes of her second-level appeal, and the final denial letter makes clear that Defendant considered everything Plaintiff submitted in connection with that appeal.   AR 001.[14]   Defendant was not required to mention specifically each document it considered in reaching its decision.   See Rutledge v. Liberty Life Assur. Co. of Boston, 481 F.3d 655, 660 (8th Cir. 2007).

Moreover, it is well-established that a Social Security award in itself does not indicate that an administrator's decision was arbitrary and capricious.   The legal principles controlling the Social Security analysis differ from those governing the ERISA analysis, and, thus, the Social Security Administration's determination of "disability" is not binding on an ERISA benefit plan. See, e.g., Burk v. Broadspire Servs., Inc., 342 F. App'x 732, 738 (3d Cir. 2009) (failure to consider award of Social Security Disability benefits not abuse of discretion); Pokol v. E.I. Du Pont De Nemours & Co., 963 F. Supp. 1361, 1380 (D.N.J. 1997) ("[I]t is not inherently contradictory to permit an individual to recover benefits pursuant to the Social Security Act while being denied benefits pursuant to a private ERISA benefit plan."); Krensavage, 2006 WL 2794562, at *9 ("[C]ourts have consistently held that ERISA plan administrators are not bound to follow Social Security Disability determinations in view of the different standard applied under that program."); Graham, 2007 WL 2905891, at *9.[15]   Similarly, Plaintiff has not identified any authority requiring

---

[14] In addition, the pulmonary specialist who reviewed Plaintiff's second-level appeal specifically lists the social security award notice and disability pension letter as documents he received and reviewed.   AR 028-029.

[15] Among other things, unlike ERISA, the Social Security analysis gives priority to the opinions of treating

the Plan to defer to the disability pension Alcoa awarded her in 2007 under a separate plan with different terms.

In addition, nothing in the Social Security or disability pension award letters Plaintiff provided to the Plan renders the Plan's failure to place weight on the awards arbitrary and capricious. With respect to the former, the record is devoid of any reference to the materials upon which the Social Security Administration relied in reaching its disability determination. Similarly, there is no record evidence that Plaintiff supplied the Plan with any additional information underlying the disability pension award such as the effective date of disability or the medical information upon which the retirement plan relied. Coupled with the different legal principles applied in the Social Security context and the differences between the terms of the LTD plan and the Alcoa retirement plan (including the plan definitions of "total disability"), this lack of information is consistent with the Plan's conclusion that the record evidence was insufficient to support a finding of total disability beginning in June 2003 for purposes of LTD benefits.

## IV.  CONCLUSION

In short, considering all of the record evidence under the arbitrary and capricious standard of review and for all of the reasons set forth above, I cannot find that the denial of benefits in this case was unsupported by the record or that the Plan denied Plaintiff a full and fair review. Accordingly, Defendant's Motion for Summary Judgment is granted.

---

physicians.  See, e.g., Herman v. Metropolitan Life Ins. Co., 689 F. Supp. 2d 1316, 1326 (M.D. Fla. 2010) (citing Black & Decker Disability Plan, 538 U.S. at 833-34)); Rupert, 2006 WL 910405, at *9 (same); see also Sollon v. Ohio Cas. Ins. Co., 396 F. Supp. 2d 560, 587 (W.D. Pa. 2005) (noting critical differences between Social Security disability program and ERISA benefit plans).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Cassandra J. Houser,                          )
                                              )
                    Plaintiff,                )
                                              )
        vs.                                   )        Civil Action No. 10-160
                                              )
Alcoa, Inc. Long Term Disability Plan,        )
                                              )
                    Defendant.                )
                                              )

AMBROSE, Senior District Judge

**ORDER OF COURT**

AND NOW, this 6th day of December, 2010, after careful consideration of the submissions

of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered

that Defendant's Motion for Summary Judgment (Docket No. 17) is granted and that Plaintiff's

Complaint is dismissed.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
Senior U.S. District Judge